## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,     *

     v.     *     Criminal No. RDB-10-0775

CHARLES LEONARD GALLOWAY,     *

     Defendant.     *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM ORDER

Defendant Charles Leonard Galloway ("Defendant" or "Galloway") is currently serving a 235-month term of imprisonment for conspiracy to distribute 1 kilogram or more of heroin in violation of 21 U.S.C. § 846. (Judgment & Commitment Order ("J&C"), ECF No. 364; Order Regarding Motion for Sentence Reduction, ECF No. 508.) Galloway, having been incarcerated since June 21, 2010, has accordingly served almost 10 years of his sentence. (Inmate Data, ECF No. 543-2.)

Now pending is Galloway's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) which has been supplemented by the Office of the Federal Public Defender pursuant to Standing Order 2019-04 of this Court. (ECF Nos. 535, 543 *SEALED*). The Government opposes the motion. (ECF No. 547) (*SEALED*). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated herein, Galloway's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 535) is GRANTED. Galloway's sentence is reduced to time served and upon expiration of a 14-day quarantine period, he shall be released to the custody of his

wife, Cantra Galloway, at her residence in Baltimore, Maryland and commence a 5-year period of supervised release.

## BACKGROUND

On December 15, 2010, the grand jury for the District of Maryland returned a four-count Indictment charging Galloway and others with conspiracy to distribute 1 kilogram or more of heroin, in violation of 18 U.S.C. § 846 (Count 1); possession with intent to distribute a detectable amount of heroin on August 2, 2010, in violation of 18 U.S.C. § 841(a)(1) (Count 2); possession of a firearm in furtherance of drug trafficking on August 2, 2010, in violation of 18 U.S.C. § 924(c) (Count 3); and possessing a firearm on August 2, 2010, after being convicted of a crime punishable by more than one year, in violation of 18 U.S.C. § 922(g)(1). (Count 4). (ECF No. 1.) The Government subsequently obtained a Superseding Indictment which did not alter the charges against Galloway. (ECF No. 159.)

Before trial, on December 16, 2011, the Government filed a notice of intent to seek enhanced penalties pursuant to 21 U.S.C. § 851. (ECF No. 169.) On February 15, 2012, this Court granted Galloway's oral motion for self-representation and ordered the Federal Public Defendant for the District of Maryland to act as standby counsel. (Letter Order, ECF No. 240.) Galloway's trial commenced on March 19, 2012. Ultimately, the jury convicted Galloway only as to Count 1 of the Indictment. (Jury Verdict, ECF No. 292.) The Government dismissed Count 2, this Court granted a motion for judgment of acquittal on Count 3, and the jury was unable to reach a verdict as to Count 4. (Sentencing Hearing Tr. 4:15-24, ECF No. 379.)

Sentencing proceedings commenced after trial. The Presentence Report prepared by the United States Probation Office did not find that Galloway had participated in violence during the conspiracy for which he was convicted. (ECF No. 379 at 72:24; PSR ¶¶ 7-10.) During the sentencing hearing, this Court determined that an offense level of 38 and a criminal history category of III applied, producing a Guidelines range of 292 to 365 months of imprisonment. (ECF No. 379 at 55:8-18.) This Guidelines calculation was based in part on a finding that Galloway had attempted to obstruct justice during his trial by contacting a Government witness in an effort to influence her testimony. (*Id.* at 54:23-55:5.) As a result of the Government's § 851 notice, Galloway faced an enhanced mandatory minimum sentence of 20 years. (*Id.* at 89:12-17.) Ultimately, this Court imposed a sentence of 292 months of imprisonment, a sentence which exceeded the 20-year mandatory minimum but fell at the low end of the Guidelines range. (J&C, ECF No. 364.)

In September 2016, Galloway submitted a Motion to Reduce Sentence pursuant to Guidelines Amendment 782. (ECF No. 505.) The Government consented to the reduction. (ECF No. 507.) This Court granted Galloway's Motion and reduced Galloway's sentence to 235 months. (Order Regarding Motion for Sentence Reduction, ECF No. 508.)

On March 29, 2019, Galloway filed the presently pending Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) which has been supplemented by the Office of the Federal Public Defender pursuant to Standing Order 2019-04 of this Court. (ECF Nos. 535, 543 *SEALED*). The Government opposes the motion. (ECF No. 547) (*SEALED*).

## ANALYSIS

The First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison.  Before the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court.  With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence. The Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the Defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" and after weighing the factors presented in 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A)(i).

### I.   Administrative Exhaustion Requirements.

There is no dispute that Galloway has satisfied the administrative exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A).  On August 7, 2017, Galloway's request for compassionate release was denied by the Warden of Federal Correctional Institution – Elkton. (Denial Letter, Sept. 20, 2017, ECF No. 543-5.)  On December 3, 2018, after his transfer to Federal Correctional Institution – Schuylkill ("FCI Schuylkill"), Galloway submitted another request for compassionate release which was denied.  (Denial Letter, Dec. 13, 2018, ECF No.

543-6.) Galloway subsequently submitted an institutional petition, but has not yet received a response from the Bureau of Prisons.

## II. Extraordinary and Compelling Reasons.

Galloway has presented extraordinary and compelling reasons justifying his release from incarceration. The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t). The Commission has determined that "extraordinary and compelling reasons" exist where "suffering from a serious physical condition" and/or a "serious functional or cognitive impairment . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Additionally, the Commission has authorized the Bureau of Prisons to identify other extraordinary and compelling reasons "other than, or in combination with" the reasons justified by the Commission. *Id.* § 1B1.13 cmt. n.1(D).

Bureau of Prisons Program Statement 5050.50 sets forth the BOP's procedures for implementing 18 U.S.C. § 3582. The regulation states that the BOP will consider reductions in sentences for "inmates who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover." Program Statement 5050.50 at 5. The regulation goes on to identify an exceedingly narrow class of individuals who will be considered for a sentence reduction: those who are "completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair" and those who are "capable of only limited self-care and [are] confined to a bed or chair more than 50% of waking

hours." *Id.* In opposing the Petitioner's request for compassionate release, the Government places great emphasis on the BOP's Program Statement.

The BOP's Program Statement does not constrain this Court's analysis.  The BOP cannot limit the physical ailments presenting "extraordinary and compelling reasons" for release identified by the Sentencing Commission.  The Sentencing Commission has been appointed by statute to identify the circumstances giving rise to "extraordinary and compelling reasons" justifying a sentence reduction and has granted the Bureau of Prisons limited authority to identify *additional* reasons for sentence reductions.  To the extent that the Bureau of Prisons has used its limited authority to narrow the class of individuals entitled to release, it has exceeded that authority.  Additionally, as Judge Blake of this Court has recognized, the First Step Act embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their "independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Bryant*, CCB-95-0202, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020).

In this case, the Court need not reach beyond the "extraordinary and compelling reasons" identified by the Sentencing Commission because Galloway has shown that he is "suffering from a serious physical condition" and a "serious functional or cognitive impairment . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).  Specifically, BOP medical records indicate that Galloway suffers from a seizure disorder, aphasia, encephalopathy, gastro-esophageal reflux disease, Type II diabetes,

Hepatitis B, anxiety, hypertension, a thyroid disorder, and gastritis. (BOP Summary of Medical Conditions, ECF No. 543-1.)   On September 18, 2013, while incarcerated at FCI Elkton, Galloway was transferred to a local hospital after vomiting blood.   (Psychology Note, ECF No. 543-8.)   Testing revealed that Galloway had suffered an intracerebral hemorrhage or stroke resulting in the loss of brain tissue.   (Letter of Dr. Zeiler, ECF No. 543-9.)   Since then, Galloway has experience memory loss, aphasia, mood swings, and extreme sensitivity to light. (*Id.*)   He also has difficulty walking and is prone to injury.   (Preliminary Report, ECF No. 543-12.)

The Government argues that Galloway has exaggerated the effects of his condition.   In support of this contention, the Government notes that Galloway holds a work assignment in the Camp Food Service Department. (Summary Reentry Plan, ECF No. 543-4.)   In a 2018 clinical encounter, Galloway expressed interest in performing pull-ups and lifting weights. (BOP Health Services Clinical Encounter, ECF No. 543-11.)   This selective reading of the record presents an incomplete picture of Galloway's life in prison.   A BOP Health Services Medical Duty Status form indicates that Galloway was restricted to "no duty" as of November 7, 2018.   (BOP Health Services Medical Duty Status, ECF No. 552-1.)   An October 2, 2019 work detail print-out indicates that Galloway was still unable to work as of that date.   (ECF No. 552-2.)   Finally, Galloway's interest in performing simple exercises does not diminish the extreme severity of his medical conditions.   The Sentencing Commission requires only that Galloway exhibit a diminished ability to provide self-care, not complete physical incapacity.

Finally, the court cannot overlook the present circumstances.   The ongoing COVID-19 Pandemic poses unique risks to elderly and vulnerable inmates, as acknowledged by

Attorney General William Barr in his March 26, 2020 memorandum to the Director of the BOP. *See* Dep't of Justice, Office of the Attorney General, *Memorandum for Director of Bureau Prisons* (Mar. 26, 2020), https://www.themarshallproject.org/documents/6820452-Memorandum-from-Attorney-General-to-BOP-re-Home. Attorney General Barr urged the BOP Director to prioritize home confinement for vulnerable inmates "who are non-violent and pose minimal likelihood of recidivism." *Id.* In response to an increasing number of compassionate release motions due to COVID-19, district courts have increasingly granted such motions when it is clear that COVID-19 poses an extraordinary and compelling reason for release of a particularly vulnerable, non-violent defendant. *See, e.g., United States v. Foster*, No. 1:14-cr-423-02, Dkt. No. 191 (M.D. Pa. Apr. 3, 2020) (granting release of defendant whose lung disease "may very well equate a COVID-19 diagnosis with a death sentence"); *United States v. Colvin*, Criminal No. 3:19cr179-JBA, 2020 WL 1613943 (D. Conn. Apr. 2, 2020) (granting compassionate release of defendant with "diabetes, a 'serious…medical condition,' which substantially increases her risk of severe illness if she contracts COVID-19."). Galloway's case falls directly in line with these cases warranting compassionate release.

## III.   Application of 18 U.S.C. § 3553(a).

Before determining whether a sentence reduction is appropriate, this Court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Accordingly, this Court must consider (1) Galloway's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for

rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See Bryant*, 2020 WL 2085471 at *4.

Galloway's personal characteristics weigh heavily in favor of a reduction in sentence to time served. At 52 years of age and suffering from a variety of serious medical conditions, it is highly unlikely that Galloway will recidivate. U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 12 (2004); *see also* U.S.S.C., *The Effects of Aging on Recidivism Among Federal Offenders* (2017). Galloway's relatively good behavior in prison is further assurance that the public is not endangered by Galloway's release. Disciplinary records reveal that Galloway has only committed one minor infraction for being "absent from assignment" in 2012, before he suffered the debilitating stroke. (Inmate Discipline Data, ECF No. 543-3.) Finally, Galloway will receive support from his spouse upon his release. (ECF No. 552-3.) Although this Court initially imposed a significant sentence proportional to Galloway's crimes, the extreme changes to Galloway's health compel this Court to grant compassionate release.

## CONCLUSION

Accordingly, for the reasons stated above, it is HEREBY ORDERED this 21st day of May, 2020, that Defendant Galloway's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 535) is GRANTED, subject to the following conditions:

1. Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Defendant Charles Leonard Galloway's term of incarceration is reduced to time served, such that he is released from the custody of Bureau of Prisons as soon as the terms of this Order can be implemented;

2.  Prior to his release from custody, the Bureau of Prisons is directed to place the Defendant Charles Leonard Galloway in quarantine for a period of 14 days and to evaluate him for the purposes of receiving a medical clearance;

3.  Upon the expiration of the 14-day quarantine period and receipt of a medical clearance, the warden of FCI Schuylkill shall forthwith release from custody the person of the Defendant, Charles Leonard Galloway;

4.  Defendant Charles Leonard Galloway shall be on supervised release status for a period of five years;

5.  Defendant Charles Leonard Galloway shall be released to the custody of his wife, Cantra Galloway, at her residence in Baltimore, Maryland;

6.  While traveling from FCI Schuylkill to his residence, Defendant Charles Leonard Galloway will isolate himself to the best of his ability.  Upon reaching his residence, Defendant Charles Leonard Galloway shall observe all applicable stay-at-home orders; and

7.  Pretrial/Probation will review the conditions of release with Defendant Charles Leonard Galloway.

```
        /s/
```
Richard D. Bennett
United States District Judge